The next case on our call to the docket today, September 13, 2011, is case number 110928, agenda number five. And before you begin with the argument, we had a conference about this case. We accepted the case before the death penalty was repealed. So we would like you to certainly begin with, and maybe end with, whether or not this case is moot, whether or not it was improvidently granted or not. Thank you. Please proceed. Steve Becker Good afternoon, your honors. My name is Steve Becker of Becker Stevenson on behalf of the defendant, Johnny Hill. The great French thinker Pascal wrote that law without force is impotent, and justice without strength is helpless. The question this court has today, apart from the idea of the death penalty being repealed, is whether or not it will enforce its own rules or allow further emasculation by the application of the mandatory directory dichotomy. I think that Mr. Hill should be granted relief based upon the abolition of the death penalty. There is a question, however, of whether or not that's a substantive or procedural change in the law, of course, and whether or not the governor's granting of this and the legislature's granting of this and him granting of the pardons, in fact, affected Mr. Hill or not. I would say, of course, that he should benefit from the abolition, and therefore, he should be granted a new sentencing hearing. There's no other questions on that point. I will proceed with the argument on the merits. Judge Cardone I don't understand. Would you tell me a little bit more about what you just said about he should be granted relief even in light of the repeal of the death penalty because why? Steve Becker Well, because the death penalty itself has been abolished, and he was potentially subject to the death penalty sentence at the time. And now that it's been abolished, I would argue at least he should benefit from the abolition. Judge Cardone Well, hasn't he already benefited from the abolition? Steve Becker No, he has not because his sentence was based upon the ceiling that the judge felt he was liable for the death penalty. Judge Cardone How do we know that? Is that in the records? Steve Becker Yes, it is. Yes. Clearly, he was subject to the death penalty. The judge decided not to give him death, decided not to give him natural life, but gave him 60 years. So clearly, the case is not moot because his sentence can be affected by the fact that he was Judge Cardone Can be affected or was affected? Did the judge say because this individual is subject to the death penalty, I'm going to give him a higher sentence? Steve Becker No, but the judge did consider death as the ceiling in the case. Judge Cardone So is it not rank speculation as to the fact that that somehow affected the judge's sentence in the case? Steve Becker Not at all because the judge could have granted Mr. Hill the death sentence. He could have granted him natural life. And instead, he chose, based upon the mitigating factors, to give him only 60 years, a term of years. And based upon that, it's very likely that he would have given him a reduced sentence if the Judge Cardone So your position is that his sentence wasn't based on the evidence. His sentence was based somehow that he could give him a higher, a greater sentence, that being death. Steve Becker That's correct. He could have given him death. He could have given him natural life. And the judge specifically said on the record that he did not give him either of those sentences based upon the mitigating factors in the case and gave him only 60 years. So if 60 was the ceiling, which it would have been without the death penalty, then clearly the judge, it appears here, would have probably given him a reduced sentence, maybe 40, 50 years. But because he viewed death as being the ceiling, the death penalty clearly affected the judge's sentence in this case. So that's why the case is not moved. How do we know it clearly affected him? Go back to Justice Thomas's question. Well, because he stated on the record that Mr. Hill was subject to death. And yet when he gave his sentencing, he said, I find under the facts of this case that I'm not going to give death, I'm not going to give natural life. As a matter of fact, I'm going to go down to a third tier and just give him 60 years. So if the ceiling that the judge could have given was only 60 years, then it's likely under the mitigating factors here that he would have reduced the sentence. And therefore, I mean, you're speculating what he thought. I mean, he only gave him 60 years. So even if the ceiling was 60 years, he still could have given him 60 years. He could have given him 60 years, but the fact that he reduced it to levels of what he could have given him gives the court pause to what he would have done if the proper sentence was in fact imposed, which here we're arguing was only 60 years. So are we to assume that when a trial judge imposes a sentence, they impose the sentence based upon a number of factors that are in the code. And they determine that this sentence that I impose is the appropriate sentence. It's not like negotiation. It's not like, well, I'm going to come down halfway in between the max and the minimum. But that's what all judges do. Based upon the maximum sentence, they make a determination. If the maximum is... So he's decided this guy doesn't deserve the max. Right. He deserves 60 years. But if the maximum was only 60 years, the judge might have reached an entirely separate conclusion. Because death was the maximum that he was viewing. But why are we not to assume that the judge looked at it and said, this isn't a death case. This case justifies a sentence of 60 years. Well, because the judge had the wrong sentence range. If we take our position as being true, that death should not have been under the table because of the failure to strike the death penalty notice. In other words, if a judge is miscomprehending the range of the sentences, that becomes a void sentence, whether it's too high, too low, whatever the fact may be. So it's a void sentence? No. But I'm saying that the judge here, because he had a view of a sentencing range that he was looking at, he was making his determination based upon the range that he thought was applicable, which was death. And our point here is death was not applicable because of the problem with the notice provision. Thus, if the ceiling for the sentence was only 60 years, he has to be remanded back so the judge can reconsider his sentence based on the proper maximum that should have been granted here. Since we perhaps should not, well, we made the decision to take the case that was a proper decision, but now it may not be. Should this case go back to the appellate court since it's not a direct appeal based upon the death penalty? Should it go to the appellate court, rather? Well, it was already at the appellate court earlier in this case. And so then they raised it up on our PLA. But it was not considered to be a death case, so it didn't come immediately to this court because he got less than the death sentence. So I think it's properly before this court. And I think the issue before this court is whether or not Mr. Hill should have been subject to the death penalty based on the notice provision. Other than Mr. Hill, would our opinion affect anyone else? If we're going to have some provision and this provision is no longer in effect, what meaning would this opinion have? Well, because there may be other individuals whose cases have not yet reached this stage or the appellate stage where the State did not go ahead and properly file the notice on time. And they may have similar issues that arise in the future, like Mr. Hill, where they were not necessarily granted death, but they were granted a sentence less and it might have affected their sentence based on the facts of the case. So this may not be the only case that this court has on this particular issue. Are you aware of any other cases? I'm not, no. So if I may proceed with the merits of the case. How much time are we into this argument right now? We'll just deviate a little. If you reserve the rest of your time, we'll hear from the State on this opening question. Keep track of that for us. Good afternoon. My name is Sally Dillgard. I'm an Assistant State's Attorney and I appear on this panel. I'd be happy to preface my remarks with a discussion about mootness, and I do submit to you that the case is moot for a number of reasons. This court need not construe a procedural rule for death cases because Illinois has repealed the death penalty. In addition, the court need not construe a death rule because Hill didn't get the death penalty. He got a 60-year sentence. Hill did not even receive an enhanced sentence, natural life, predicated on the eligibility factor that had been proven in his case. Instead, he got a non-enhanced 60-year term that had nothing whatsoever to do with his eligibility. We made this argument our brief, and Hill in his reply brief has not made any attempt to argue that his case falls with any of the recognized exceptions to the Illinois mootness doctrine. In response to questions from the bench, I would submit to you that his case doesn't satisfy the recurrence exception because the double jeopardy clause would preclude the judge from giving him death on remand. The public interest exception to the mootness doctrine would also not apply. There are no potential reoccurrences to other people. The death penalty has been repealed in Illinois. Let's talk for a moment, then, about his argument that perhaps the judge's decision, Judge Porter's decision to deny the motion to strike, to deny the motion to preclude the death penalty, might have had some effect on the other judge, Judge Ford's decision to impose a 60-year sentence. Trying to gather my thoughts here. First of all, in his opening brief filed in this court, Mr. Hill at no time ever argued that the ruling on the motion to strike ever affected Judge Ford's decision to give him 60 years. As a result, under Rule 341, we would submit to you that he has waived his right to raise it for the first time in a reply brief or an oral argument. Instead, in his opening brief, he changed course entirely. He completely cut himself away from the moorings of that argument and said, no, I'm arguing a different kind of prejudice that applies to all defendants. He talked about a potential rather than an actual sentence. He talked about the psychological trauma that a person might feel not knowing whether or not the state intended to seek death. He referred to the daunting prospect of execution. Those are exact words from his brief. In other words, in his opening brief, he never made any attempt to argue that the ruling on the motion or the late notice in this case in any way affected the 60-year sentence. But let's take a closer examination of that argument. First of all, if Hill is correct and the judge should have granted that motion to strike and should have barred the death penalty, that only means that Hill couldn't have received the death penalty. There is no logical or factual reason to conclude that that alleged error somehow influenced the judge's decision to give him 60 years as the appropriate sentence for the unique mix of aggravating and mitigating factors in this case. In his reply brief and in his oral argument in the appellate court, Mr. Hill argued for the first time that the judge had somehow resolved to sentence him to something that was one notch below the maximum penalty. Those are his exact words. And he says if the judge had, my response would be that, first of all, there's absolutely nothing in the record whatsoever to support the conjecture. I think someone just referred to it as rank speculation, that Judge Ford had resolved to say, oh, I'm going to give him 65 percent of the available max or I'm going to give him 70 percent of the available max. There's nothing whatsoever in the record to suggest such a conclusion. And Mr. Hill certainly has not cited any page in the record that would support his argument. Moreover, if that had been true, assuming for purposes of argument that Judge Ford decided to give him 70 percent of the max or one notch below the maximum as he argued below, then the judge would have given him natural life, predicated on the eligibility factor. But he didn't do that. And incidentally, the judge could have also imposed an extended term sentence, two notches below the maximum, on the basis of brutal or heinous conduct, but the judge didn't do that either. The eligibility factor in this case did not influence the judge's choice of sentence in any way, demonstrated by the fact that he gave Hill a non-enhanced 60-year sentence. We know the reasons for Judge Ford's sentencing decision. He made detailed findings, which we've repeated in our brief. When he entered his findings for the brief, he referred to Hill's criminal record, which contains seven prior convictions for drug, guns, and domestic battery offenses. He repeatedly referred to the facts of this crime. And this is what Judge Ford said, that after forcing his way into the apartment, Hill beat his victim about the head and body and forced her to undress in an attempt to deter her escape. He then ejected his naked victim out a ninth story window. And the word ejected is Judge Ford's word, not mine. And caused her to plunge to her death in a concrete slab below. Judge Ford also recounted the evidence that the victim had screamed all the way down, and her broken fingernails were left behind in the track of the window, which showed just how frantically she'd struggled to save her life. Ms. Dillgard, is this focusing on the mootness question? I will. The point I want to make is, is that the judge repeatedly said he was imposing the 60-year sentence here on the basis of the fact that, in his words, the murder was both gruesome and barbaric. As a result, I would submit two things. One is that Hill cannot argue before you today that the eligibility determination in any way affected the 60-year sentence because he did not make that argument in his opening brief. And under Rule 341, it's forfeited. And secondly, it was always a matter of conjecture anyway because we know Judge Ford's reason for his 60-year sentence. I'm not sure, since we're doing this in a somewhat unusual way. Do you want me to go on and talk about the rule, or do you want me to respond? No, I think we want to focus on the mootness question. So if you're covered on that, then we'll ask you. Yeah. The only thing I had was a conclusory remark to the effect that Hill shouldn't be asking this Court for general dissertation on the law. The only issue that he raises has ceased to exist, and therefore this case should be dismissed as moot. Thank you very much. Mr. Becker, do you want to give us about a three-minute rebuttal on that? Your Honor, this case is not moot. The appellate court correctly found it was not moot as well. And this is under People v. Jackson, which is a decision of this Court, which says that we're... Well, when the appellate court had it, the death penalty was still in force, right? It was still in force. Yes, that's correct. Right. Now, we have it, and you would agree the death penalty's repealed. So we're in a different situation than the appellate court in deciding mootness, aren't we? Well, you are, but Mr. Hill never received the death penalty, and that's the very point why this case is not moot, because we're a judge who's under a misconception of the proper statutory sentencing range, which is our very issue here, because the notice of intent should have been stricken, and he should not have been subject to the death penalty. Right. But the appellate court could still give guidance relating to the issue, right, of the rule. Yes, as... And they could have found an exception to the mootness doctrine based on that guidance. We don't have that. Do you agree with that? The exception... I know you're asking us to go beyond this rule and the rules in general and everything else, but when the appellate court ruled and said that it wasn't moot, even without going into their argument, there was a death penalty in effect. Right, but the reason that it... The fact that the death penalty is now abolished does not help Mr. Hill. It doesn't help Mr. Hill at all in the sense that he was still subject to the death penalty, and the judge considered that that was the ceiling for his sentencing range at the time. Otherwise, you are taking away Mr. Hill's rights, because... I understand your argument as to why it's not moot. Yes. I don't quite understand your argument as to why you throw in that the appellate court found that it wasn't moot. They were faced with a bit of a different situation. But I'm saying it was not dispositive. This court should rule the same way the appellate court did. Because Mr. Hill was subject to the death penalty, we believe improperly the judge was looking at a higher ceiling sentencing range than was appropriate. And under People v. Jackson, which is this court's ruling, where that is the case, the defendant is entitled to a new sentencing hearing. It's just wrong if the judge thought there was either a lower or a higher range. The defendant should believe that. And that's our very case here. That's why this is not moot. And this court should go ahead and remand the case back for a new sentencing hearing. There are no further questions? Thank you. I would ask the parties to stay here. We're going to conference for an appropriate amount of time and then get back to let you know how we're going to proceed. Thank you, Your Honor. Thank you. Stand at recess until undetermined. Mr. Marshall, the Illinois Supreme Court has reconvened. For the record, it's still September 13th. We're here on case number 110928. Agenda number five. After the brief oral arguments on the issue of mootness, we have conferred and decided unanimously that the case is moot, order to follow. Mr. Marshall, the Illinois Supreme Court is adjourned. Until tomorrow morning at 938.